UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DAN M. DALEY,

               Plaintiff,                      Case No. 6:14-cv-00100-ST

          v.                               **OPINION AND ORDER**

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

STEWART, Magistrate Judge:

     Plaintiff, Dan Daley ("Daley"), seeks to reverse and remand the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This court

has jurisdiction under 42 USC § 405(g) and § 1383(c).  All parties have consented to allow a

Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and

28 USC § 636(c) (docket #7).

     Because the Commissioner's decision is supported by substantial evidence, it is affirmed.

## ADMINISTRATIVE HISTORY

Daley filed an application for DIB on April 23, 2009, alleging a disability beginning September 1, 2008, due to diabetes mellitus II, severe neuropathy, hypertension, osteoarthritis, and blindness in the left eye. Tr. 100, 125.[1] After the Commissioner denied his application initially and upon reconsideration, Daley requested a hearing (Tr. 79-80) which was held on November 17, 2011. Tr. 37-62. On April 6, 2012, Administrative Law Judge ("ALJ") Marilyn S. Mauer issued a decision finding Daley not disabled. Tr. 11-30. The Appeals Council denied Daley's subsequent request for review on November 18, 2013. Tr. 1-4. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 422.210.

## BACKGROUND

Born in 1949, Daley was 58 years old on the alleged onset date. Tr. 135. He completed at least one year of college and served in Vietnam, earning a bronze star for his service. Tr. 41, 133, 167. Daley worked as an inventory control clerk and audit clerk until September 2008. Tr. 126, 619.

## ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on July 8, 2014 (docket #11).

At step one, the ALJ found that Daley had not engaged in substantial gainful activity after the alleged onset date of September 1, 2008. Tr. 14. At step two, the ALJ found that Daley has the following severe impairments: idiopathic peripheral neuropathy of the hands and feet bilaterally; diabetes mellitus II, diet controlled; hypertension; and blindness of the left eye. *Id*. At step three, the ALJ found that Daley did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*.

The ALJ next assessed Daley's RFC and determined that he could perform sedentary work except that:

> he requires the opportunity to stand briefly every 30 minutes, possibly walking away from the work area, but being able to return to work within five minutes. He must avoid hazards, such as ladders, ropes, scaffolds, unprotected heights, or moving machinery. He should never operate foot controls. He can frequently balance. He can occasionally stoop, crouch, crawl, kneel, and bend. He can frequently, but not continuously, use his hands to grasp and fine-finger. He should avoid exposure to extreme cold.

Tr. 15.

At step four, the ALJ found Daley could perform his past relevant work as an inventory control clerk and as an audit clerk as actually performed at sedentary exertion. Tr. 29. The ALJ therefore concluded that Daley is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir

2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is

susceptible to more than one rational interpretation, the Commissioner's decision must be upheld

if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533

F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190,

1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## DISCUSSION

Daley argues that the ALJ erred by:  (1) rejecting his testimony; (2) rejecting the opinion

of his private treating physician; and (3) rejecting the disability rating by the Veteran's

Administration ("VA").

## I.    Opinion of Treating Physician

Daley's private treating physician Kirk D. Jacobson, M.D., saw Daley over 48 times in a

12-year period beginning in 1998.  Tr. 311.  On January 5, 2009, Dr. Jacobson wrote the

following:

> Dan Daley is a veteran who was exposed to Agent Orange.  The patient has
> multiple problems related to that, including severe peripheral neuropathy,
> significant adult onset diabetes mellitus, and severe osteoarthritis.
>
> As a result of this severe neuropathy, the patient has had to make multiple
> adjustments at work and has finally had to stop work per my recommendations
> because of the severity of this.  The patient's diabetes has been controlled by the
> patient's excellent work at losing weight.  The patient has lost over 60 pounds and
> that weight loss has dramatically helped his overall status.
>
> Overall, the patient is extraordinarily limited from his diabetes, but in particular
> from his neuropathy.  My chart notes will reflect these limitations.

Tr. 259.

On September 13, 2010, Dr. Jacobson completed a medical evaluation form, diagnosing

Daley with hyperplasia of the prostate, diabetes mellitus, peripheral neuropathy, diverticulosis of

the colon, hypertension, insomnia, sleep disorder, and osteoarthritis.  Tr. 828-29.  Dr. Jacobson

opined that Daley had to lie down during the day due to pain. Tr. 830.  He also opined that

Daley's medications (Vicodin, Lunesta, Gabapentin, and Minoxidal) have side effects that would

affect his "mental status and cognitive ability."  *Id.*  He checked boxes which limited Daley to

standing and walking less than two hours in an eight-hour day, sitting less than six hours, and

lifting 20 pounds only occasionally.  Tr. 831.  Dr. Jacobson also checked a box indicating that

Daley's medical impairments would render him unable to maintain a regular work schedule, and

that Daley would be absent from work more than two days per month.  *Id.*

A year later on October 4, 2011, Dr. Jacobson wrote that Daley is limited to using his

hands for fine manipulations for one hour in an eight-hour day.  Tr. 858.  He assessed the same

limitation for gross manipulations, stating that Daley "really is not going to perform much using

his hands or his feet."  Tr. 858-59.  Dr. Jacobson reiterated his earlier assessment that the side

effects of Daley's medications would impact his cognitive function.  Tr. 859.

Although the ALJ found that Daley "is clearly impaired, primarily by peripheral

neuropathy," she gave "little weight" to the opinions of Dr. Jacobson that Daley could not

perform full-time work.  Tr. 28.  The ALJ rejected Dr. Jacobson's opinions as inconsistent with

the medical record, including "usually unremarkable" clinical signs, "normal" functional tests

(gait, strength and reflexes), the conclusions by John Hamby, M.D., the conclusions by

Christopher Park, O.T.R., and Daley's activities.  *Id.*  Daley argues that the ALJ's conclusion is

not supported by substantial evidence.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions.  *Carmickle v. Comm'r*, 533 F3d 1155, 1164 (9th Cir 2008).  The

opinion of a treating physician is generally accorded greater weight than the opinion of an

examining physician, and the opinion of an examining physician is accorded greater weight than

the opinion of a non-examining physician.  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).  An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991).  In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester*, 81 F3d at 830.  An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings.  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

Daley first argues that the ALJ erred by giving greater weight to the opinions of Dr. Hamby and Mr. Park than to Dr. Jacobson.  In December 2011 after the hearing, Dr. Hamby performed a musculoskeletal examination of Daley.  Tr. 876.  The examination revealed "[n]ormal gripping, grasping, manipulation bilaterally," intact sensation "in the upper extremities with pinprick, light touch, proprioception and vibration," and "only the presence of decreased sensation in the right lower extremity, from the upper calf distally."  Tr. 876-77.  Dr. Hamby concluded that Daley had no lifting, postural, or manipulative restrictions and could sit for up to 30 minutes at a time, up to six hours per day, and walk one mile or for 30 minutes at a time, up to four hours per day.  Tr. 877.  He later reviewed electrodiagnostic studies performed on August 8, 2008, and found that they supported his assessment of Daley's polyneuropathy-related restrictions.  Tr. 899-901.

Also in December 2011 after the hearing, Mr. Park performed a functional capacity evaluation of Daley, including grip strength measurements, a "dexterity and coordination" test, and a spinal function sort.  Tr. 888-98.  Mr. Park concluded that Daley's "[c]apacities as demonstrated during this evaluation today indicate that [he] is performing at the SEDENTARY-

LIGHT physical demand performance level." Tr. 894.  He also found that Daley could frequently grasp, pinch, or show finger dexterity.  Tr. 896-97.

Because Dr. Jacobson treated Daley over 12 years and observed his declining condition after the alleged onset date of September 1, 2008, Daley also argues that his opinions carry greater weight than the opinions of Dr. Hamby and Mr. Park based on their single examinations. The treatment relationship is one factor in the non-exclusive list of factors set forth in the regulations.  20 CFR § 404.1527.  However, the Ninth Circuit has made clear that the treatment relationship is not the controlling factor in the analysis, acknowledging that "[t]he ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusory and brief and is unsupported by clinical findings."  *Matney v. Sullivan*, 981 F2d 1016, 1019 (9th Cir 1992).

The ALJ noted that Dr. Jacobson was Daley's "regular provider" (Tr. 15), summarized many of his medical notations during the relevant time period, and acknowledged that the opinion of Dr. Jacobson as a treating physician "may be entitled to controlling weight" depending on "such factors as its support by diagnostic evidence and consistency with the entire record." Tr. 28.  In no respect did the ALJ ignore Dr. Jacobson's longitudinal treatment of Daley.  However, in comparison to the opinions of Dr. Hamby and Mr. Park, Dr. Jacobson's opinions as to Daley's limitations were conclusory.  Other than noting that Daley suffers from neuropathy, he did not provide any testing or examination results to support his opinion that "fine manipulations are just out of the picture" and Daley "really is not going to perform much using his hands or his feet." Tr. 858-59.

Daley suggests that the results of Mr. Park's examination are consistent with Dr. Jacobson's opinions.  After administering a "dexterity and coordination" test where "[s]cores reflect time required to grasp, manipulate and move the discs," Mr. Park found that Daley scored

below the first percentile for bilateral upper extremity dexterity and coordination.  Tr. 893.

However, Mr. Park noted that his "below average score is likely a reflection of slow upper

extremity movement, rather than any deficit in prehension or dexterity."  *Id.*  Mr. Park also

measured Daley's grip strength at over 100 pounds in each hand and his lateral and plamar

prehension between the 75th and the 90th percentile.  Tr. 892.  This means that Daley's ability to

use his hands and feet was substantiated by Mr. Park's testing, thus contradicting Dr. Jacobson's

conclusions.

Daley also argues that the ALJ erred by finding that his activities were inconsistent with

Dr. Jacobson's opinion.  On October 4, 2011, Dr. Jacobson opined that Daley could use his

hands for only one hour a day.  Tr. 858.  This is consistent with Daley's testimony at the hearing

on November 17, 2011, that he stopped running a chain saw about a year and a half to two years

prior to the hearing  Tr. 51.  However, as the ALJ noted, Daley reported to his VA treatment

provider on July 8, 2011, that "he gets fatigued and sore after weed eating for three to four hours,

or tending his 80 acre spread."  Tr. 791.  That report is inconsistent with Dr. Jacobson's opinion

just a few months later.  Furthermore, Dr. Hamby and Mr. Park measured Daley's functioning at

in December 2011 after the hearing which supports the ALJ's finding of a discrepancy.

In sum, the ALJ provided specific, legitimate reasons to reject Dr. Jacobson's opinion

that due to his neuropathy, Daley is so severely limited in the use of his hands and feet that he

would miss at least two days of work per month.

## II. <u>Daley's Testimony</u>

At the hearing, Daley testified that he had trouble using his hands due to numbness and

tingling.  Tr. 13.  He stated that his symptoms have grown worse since he stopped working in

August 2008.  Tr. 49.  Although he suffers from diabetes mellitus, he controls his symptoms with

diet and exercise.  Tr. 46.  He testified that he can stand for ten minutes and sit for ten minutes before requiring a break.  Tr. 50.  He is able to work in the yard and do housework, but only for two hours a day on his own property.  Tr. 49-50.  He takes Hydrocodone, Gabapentin, and Metropropil which cause drowsiness and difficulty focusing on one train of thought.  Tr. 14.

The ALJ found Daley's statements "show that he is clearly impaired, primarily by peripheral neuropathy[,]" but rejected his testimony as to the severity of his limitations.  Tr. 15.  Daley challenges this finding.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms.  *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009).  First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter*, 504 F3d at 1036.  Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).  The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.  *Batson*, 359 F3d at 1197.

Given the lack of any evidence of malingering, the ALJ was required to give clear and convincing reasons to reject Daley's testimony.  Although not listed in an orderly manner, the ALJ's decision contains a number of clear and convincing reasons why Daley's alleged symptoms are not supported by the record.

As one reason, the ALJ noted that Daley made inconsistent statements. Tr. 24. One example of an inconsistent statement is Daley's statement to Dr. Jacobson that he stopped working because of his impairments. Tr. 24, 259. Daley testified to the contrary that he stopped working because he was laid off (Tr. 43) and told Dr. Hamby that he stopped working because his employer's business closed. Tr. 872. In assessing a claimant's credibility, the ALJ is entitled to use "ordinary techniques of credibility evaluation, such as claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F3d 1144, 1148 (9th Cir 2001). Thus, the ALJ reasonably inferred that Daley was less than credible based on his inconsistent statements regarding his reason for leaving his job. Further, because the ALJ may disregard subjective pain testimony where the claimant stopped work due to reasons other than the alleged disability, the ALJ was also entitled to reject Daley's pain testimony based on his conflicting reports. *Bruton v. Massanari*, 268 F3d 824, 828 (9th Cir 2001) (finding that the ALJ properly rejected testimony of claimant who left his job because he was laid off).

The ALJ also noted that Daley reported severe limitations in his application for benefits, but minimized these symptoms in his examination with Dr. Hamby. Tr. 24. In his application, Daley stated that he cannot use his hands at all. Tr. 125. Yet Dr. Hamby noted that Daley reported no problems with lifting or carrying and that his hand problems were not nearly as severe as his leg problems. Tr. 872. This evidence provides further weight to the ALJ's credibility assessment.

Second, the ALJ stated that Daley exhibited greater functioning than he alleged. Tr. 26. Activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001). For example, the ALJ noted that Daley

was able to work after the onset of his symptoms and is able to perform yard work such as raking leaves and mowing the yard. Tr. 49. The ALJ also noted that Daley testified at the hearing that he can walk one or two miles a day and perform housework such as vacuuming and doing dishes. Tr. 26, 49-50. He was able to cut wood with a chainsaw after the alleged onset date. *Id.*

Daley protests that he was only able to perform these activities with breaks and at his own pace. Tr. 51-52. Irrespective of the level of sustained functioning demonstrated by Daley's activities, the inconsistency between Daley's allegations and his ability to perform those activities at all is sufficient to support the ALJ's credibility finding. *See Valentine v. Comm'r*, 574 F3d 685, 693 (9th Cir 2009) (upholding adverse credibility finding where activities suggested that "Valentine's later claims about the severity of his limitations were exaggerated").

More importantly, the ALJ did not find that Daley's activities demonstrated an ability to sustain "vigorous exercise" for eight hours a day. Instead, she found that Daley's activities indicated that he could, at a minimum, lift 10 pounds at a time and occasionally stand and walk. Tr. 15. Employing similar reasoning, Mr. Park concluded that Daley could work at a light-sedentary level full-time or function at a higher level of exertion over a shorter period of time. Tr. 894. Even Dr. Jacobson observed that Daley stays "very busy and active." Tr. 266. In addition, Sharon Eder, M.D., concluded Daley "appears presently to be functioning at the medium level." Tr. 824. Based on this evidence, the ALJ reasonably inferred Daley's activities demonstrated that he was capable of at least sedentary exertion.

Third, the ALJ found that objective clinical findings in the record did not support Daley's alleged limitations. Tr. 26-27. Minimal objective findings can further undermine a claimant's credibility when other reasons are present. *Burch v. Barnhart*, 400 F3d 676, 680-81 (9th Cir 2005). Daley alleged that he could not use his hands and was unable to grip a pen. Tr. 125, 153,

167, 173.  However, in May 2008, William Mitchell, M.D., examined Daley and found that his hands were normal, apart from decreased temperature sensation "in a patchy fashion below the wrists."  Tr. 632.  In March 2009, Daley exhibited grip strength of 80 pounds or more in both hands.  Tr. 622.  Six months later, Donald Venes, M.D., observed that Daley had "strong grips." Tr. 636.  At the December 2011 musculoskeletal examination, Dr. Hamby recorded that Daley exhibited "[n]ormal gripping, grasping, manipulation bilaterally" with intact sensation in his upper extremities. Tr. 876.

Daley also reported that he stumbles and falls when he walks because he can no longer feel his legs.  Tr. 167.  However, neurological examinations showed normal gait, balance, motor function, and coordination.  Tr. 418, 430, 544, 556, 632, 835, 841.  In December 2011, Dr. Hamby found only "the presence of decreased sensation in the right lower extremity, from the upper calf distally." Tr. 877.

Thus, the ALJ reasonably relied on the discrepancies between Daley's descriptions of his limitations and the objective evidence to conclude that Daley is not a credible source of information about his limitations.  *Carmickle*, 533 F3d at 1161.

Because the ALJ provided at least one clear and convincing reason for rejecting Daley's testimony, her credibility finding is affirmed.  *Molina v. Astrue,* 674 F3d 1104, 1115 (9th Cir 2012) ("an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion'").

III.    <u>**VA Disability Rating**</u>

Daley is a Vietnam veteran who was exposed to Agent Orange.  Tr. 259.  The VA assessed a combined disability rating of 70% as of October 30, 2006.  Tr. 103.  The VA subsequently decided that as of September 27, 2008, Daley's "combined rating is 70% disabling,

however, we are paying [him] at the 100 percent rate because [he is] considered unemployable due to [his] service connected disabilities." Tr. 108. The ALJ concluded that the VA's disability rating did not establish that Daley is disabled within the meaning of the Social Security Act ("SSA"). Tr. 27-28. Daley challenges this conclusion.

A determination by another governmental agency about whether a claimant is disabled is based on that agency's rules and such determination is not binding on the Commissioner. 20 CFR § 404.1504. An ALJ must, however, "ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F3d 1072, 1076 (9th Cir 2002) (reversing a denial of benefits because the ALJ "failed to consider the VA finding and did not mention it in his opinion"). Because the VA and SSA criteria for determining disability are not identical, an ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id*; *see also Sours v. Colvin*, 2014 WL 4793894, at *9-10 (D Or Sept. 25, 2014). Therefore, the ALJ was required to provide persuasive, specific, and valid reasons for rejecting the VA's disability finding.

First, the ALJ noted that the VA made "no attempt to identify the actual degree of limitations [Daley's] impairments caused," but instead reached a decision "by the presence or absence of symptoms such as the loss of sensation." Tr. 27. The SSA authorizes an award of disability benefits only where the claimant's "impairments are of such severity that he is not only able to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 USC § 423(d)(2)(A). To make this determination, the ALJ must evaluate "the most [the claimant] can still do despite [his] limitations." 20 CFR § 404.1545. In contrast, the VA's disability rating did not identify Daley's functional limitations, but merely noted the presence of diagnoses and symptoms. For example, the VA

assessed a 20% disability rating based on diabetes mellitus because "there is a requirement for insulin and restricted diet, or oral hypoglycemic agent and restricted diet."  Tr. 192.  It is unclear how this limits Daley's ability to work, especially when both Daley and Dr. Jacobson confirm that he controls his diabetes by diet and exercise alone.  Tr. 46, 259.

Second, the ALJ observed that the VA's decision did not rely on any "vocational evidence to establish that work is unavailable to someone with [Daley's] particular mix of impairments and resulting limitations." Tr. 27.  Under the SSA, the claimant's functional limitations must be compared to the claimant's past relevant work and to work existing in significant numbers in the national economy.  42 USC § 423(d)(2)(A).  The VA concluded Daley was unemployable based on his 70% disability rating.  Tr. 108.  However, the VA decision does not include any of the vocational information necessary to conclude there is no work in the national economy that Daley is capable of performing.  Tr. 107-11.

Third, the ALJ observed that the VA's decision was inconsistent with the record. Although the VA found Daley disabled based on a 70% disability rating effective October 30, 2006 (Tr. 103, 108), Daley worked full-time after that date.  Tr. 43, 116.  The record also contains evidence that Daley stopped working not because of his impairment, but because his employer closed the business.  Tr. 872.

Fourth, the VA's decision is not consistent with the medical opinion evidence.  Tr. 27-28. Every medical source, apart from Dr. Jacobson, opined that Daley could function at least at the sedentary level.  Although Dr. Jacobson felt that Daley was "extraordinarily limited from his diabetes, but in particular from his neuropathy" (Tr. 259), he noted that his diabetes was well-controlled on diet alone, that he showed normal griping, gasping, manipulation in his upper

extremities, normal strength, and that he had intact sensation in his upper extremities.  Tr. 259, 656, 791-92, 876.

Fifth, the ALJ noted that the VA decision did not take into account Daley's activities. Tr. 28.  In fact, Dr. Venes, a VA physician who was aware of Daley's level of activity, questioned whether Daley was actually disabled.  Tr. 656 ("There are some elements of [Daley's] history which make me wonder whether or not disability status is appropriate--these include his record of vigorous exercise and hiking[,] biking and doing other activities, all of which suggest that the patient remains able bodied.").

In sum, the ALJ did not err by concluding that the VA rating was not probative evidence that Daley is disabled within the meaning of the SSA.

## <u>ORDER</u>

For the reasons discussed above, the Commissioner's decision that Daley is not disabled is affirmed.

DATED this 2nd day of April, 2015.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge